3:23-mj-00180

DISTRICT OF OREGON, ss:        AFFIDAVIT OF STEPHANIE BLASINGAME

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Stephanie Blasingame, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am employed as a Special Agent (SA) with the Federal Protective Service (FPS) and have been employed by FPS since 2016. I have participated in several investigations relating to the protection of federal facilities and personnel. I am currently assigned to Region 10 in Portland, Oregon as a general crimes criminal investigator. I was previously a Captain with the Department of the Army (DA) Police force serving as a Special Reaction Team (SRT) Commander, Traffic Accident Investigator, and Military Police Investigator from 2004 to 2016. I am a veteran of the United States Army serving as a Military Police Officer from 2001 to 2012. I graduated from the Federal Law Enforcement Training Center (FLETC) Police Academy and Advanced Academy in 2016, and the FLETC Criminal Investigations and Advanced Investigations Academy in 2022. I completed the Civil Aviation Security Specialist Course in February of 2002 and the ATF Inspector Course in January of 2001. I obtained a Bachelor of Science degree in Criminal Justice from Mount Olive College in 2012. I obtained my Master of Public Administration and Master of Homeland Security degrees from The Pennsylvania State University in 2014. As a result of training and experience as an FPS Special Agent, I am familiar with Federal laws and the application of such laws.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for **Ryan F. Bautista-Bonneau**, for entry by false pretenses to any real property, vessel, or aircraft of the United States or secure area of any airport or seaport, in violation of 18 U.S.C. § 1036. As set forth below, there is probable cause to believe, and I do believe, that **Bautista-Bonneau**

entered by false pretenses to any real property, vessel, or aircraft of the United States or secure area of any airport or seaport, in violation of 18 U.S.C. § 1036.

## Applicable Law

3.     Title 18, United States Code, Section 1036 provides that whoever, by any fraud or false pretense, enters or attempts to enter any real property belonging in whole or in part to, the United States shall be punished by a fine or imprisonment for not more than 10 years, or both.

## Statement of Probable Cause

4.     On October 14, 2023, at approximately 1145 hrs. I received a call from United States Marshal (USM) Pete Cajigal that an individual had unlawfully entered the Mark O Hatfield Federal Courthouse (hereinafter "Facility"), located at 1000 SW Third Avenue, Portland, Oregon. I was also told that the person who entered the Facility, later identified as Bautista-Bonneau, had barricaded himself in the mail room located on Level 1 of the parking garage. The Mark O. Hatfield Federal Courthouse is located in the District of Oregon and is property of the United States.

5.     While en route to the Facility, I was notified that Bautista-Bonneau had been arrested by Portland Police Bureau Officers and transported to the Legacy Good Samaritan Hospital. He was placed on a police officer hold pending a mental health evaluation.

6.     I interviewed Protective Security Officer (PSO) Justin Hambleton, who was working at the Facility when the incident occurred. PSO Hambleton reported he arrived at the Facility for his shift at approximately 0545 hours and observed Bautista-Bonneau walking along SW 2nd Avenue on the sidewalk adjacent to the east-facing side of the Facility through personal observation. PSO Hambleton received his shift briefing from the overnight PSO, Hackbarth.

PSO Hackbarth informed PSO Hambleton he observed Bautista-Bonneau on Video Surveillance System (VSS) loitering at the Court Security Officer (CSO) entrance on SW Salmon Avenue at 0046 hours. At that time, PSO Hackbarth approached Bautista-Bonneau and asked if he could assist him. Bautista-Bonneau identified himself as "Ryan Bieber Bonneau" and told PSO Hackbarth that he worked for the Central Intelligence Agency (CIA). Bautista-Bonneau told PSO Hackbarth he had permission from Judge Mosman to enter the Facility to work on ongoing issues and stated he needed to access the upper floors of the Facility for CIA activity. PSO Hackbarth asked Bautista-Bonneau for identification, but he did not have any identification on him. Bautista-Bonneau told PSO Hackbarth he would have Judge Mosman call him to allow him access to the Facility. PSO Hackbarth told Bautista-Bonneau that a phone call was not sufficient for him to gain access. Bautista-Bonneau informed PSO Hackbarth that Judge Mosman was on his way to the Facility to escort him inside. PSO Hackbarth told Bautista-Bonneau he would come back outside when Judge Mosman arrived. PSO Hackbarth returned to the security station in the front lobby of the Facility and at approximately 0150 hours, Bautista-Bonneau left the Facility property. At approximately 0216 hours, SPSO Hackbarth observed Bautista-Bonneau return to the facility and once again sit outside the CSO entrance located on the north facing side of the building, along SW Salmon Avenue. PSO Hackbarth was escorted out of the facility at the end of his shift at 0600 hours by oncoming PSO Hambleton to prevent Bautista-Bonneau from attempting to enter the facility.

7.  At approximately 0700 hours, Bautista-Bonneau left the Facility area and returned at approximately 1000 hours. At approximately 1039 hours, PSO Hambleton received a call on the security desk phone. The caller appeared to be male and told PSO Hambleton he locked

himself out of the Facility and needed assistance getting back inside. PSO Hambleton, believing the call was from an authorized Facility employee or contractor, walked to the CSO entrance on SW Salmon Avenue. Upon opening the door, PSO Hambleton recognized the person attempting to gain access was Bautista-Bonneau, and there was no one else requesting access at this time. PSO Hambleton told Bautista-Bonneau he was not allowed access to the Facility and Bautista-Bonneau got angry and screamed, "I am the Director of the CIA and I have access!" Bautista-Bonneau then tried to push open the door and PSO Hambleton pulled it shut. Bautista-Bonneau continued to yell through the door that he worked for the CIA and knew Judge Mosman. Security Officer Hambleton returned to the security station in the front lobby of the Facility. I believe Bautista-Bonneau may have used the call box on the SW 2nd side of the Facility to request entry into the building, and after placing the call, he approached the CSO door on SW Salmon.

8. Minutes after returning to the security station, PSO Hambleton received a phone call from a female employee who works at the Facility. The female employee stated that as she was exiting the Facility through the vehicle entrance on SW Second Avenue, an unknown male walked inside the Facility and down the entrance ramp into the parking garage. PSO Hambleton immediately responded to the stairwell on the south side of the facility and entered the parking garage. He observed Bautista-Bonneau sitting in the lobby area at the entrance of the mail room. Security Officer Hambleton informed Bautista-Bonneau that he was not allowed inside the facility. Bautista-Bonneau began to verbally argue with Security Guard Hambleton and an Assistant United States Attorney (AUSA) (who stopped by to assist) when they proceeded to call the FPS Denver Mega Center for assistance. Bautista-Bonneau became agitated at PSO Hambleton for calling additional police units and again told him he was the Director of the CIA.

Bautista-Bonneau told both PSO Hambleton and the AUSA to leave the room. PSO Hambleton stepped out of the room and closed the door, securing Bautista-Bonneau in a contained area to prevent him from gaining access to any other space.

9. Bautista-Bonneau, upon hearing the door close, entered the mail room space and closed the doors. Using both a chair underneath the door handle and a door stop, he barricaded himself inside the mail room. Portland Police Bureau Officers arrived on scene a few minutes later to assist, and two Deputy United States Marshals arrived approximately ten minutes later. Bautista-Bonneau refused to come out of the mail room and would not respond to multiple requests by law enforcement for him to exit. The United States Marshals breached the mail room door and attempted to take Bautista-Bonneau into custody. According to the United States Marshals, Bautista-Bonneau resisted being arrested, was tased, and placed in handcuffs. Portland Police took physical custody of Bautista-Bonneau and provided him with a medical evaluation by American Medical Response (AMR). Portland Police charged Bautista-Bonneau with a citation for Trespass II and escorted him to the Legacy Good Samaritan Hospital where he was placed on a police officer hold pending a mental health evaluation.

10. At approximately 1424 hours, I received a message from the Portland Police Bureau notifying me Bautista-Bonneau had escaped his hold from the hospital and left all his belongings behind. At approximately 1457 hours, I was notified by PSO Hambleton that Bautista-Bonneau had returned to the facility and was walking around the exterior on the sidewalk. At approximately 1508 hours, the Portland Police Bureau detained Bautista-Bonneau in handcuffs pending my arrival at the Facility.

11. I assumed physical custody of Bautista-Bonneau and asked him if he would like to talk with me. He told me he wanted to sleep and proceeded to fall asleep in the back of the patrol car. I, along with FPS Special Agent David Miller, transported Bautista-Bonneau to the Multnomah County Detention Center (MCDC). While processing Bautista-Bonneau, the sheriff's deputy asked me if I had any behavioral issues with Bautista-Bonneau because he has, in the past, assaulted a deputy in the jail. I informed him that I had no behavioral issues with Bautista-Bonneau while in my custody.

### Conclusion

12. Based on the foregoing, I have probable cause to believe, and I do believe, that Ryan F. Bautista-Bonneau by false pretense, entered or attempted to enter any real property belonging in whole or in part to, the United States in violation of 18 USC § 1036. I therefore request that the Court issue a criminal complaint and arrest warrant for Ryan F. Bautista-Bonneau.

//

//

//

//

//

13. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Leah K. Bolstad, and AUSA Bolstad advised me that in her opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Stephanie Blasingame
Special Agent
U.S. Department of Homeland Security
Federal Protective Service (FPS)

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __10:55 a.m.__ on October __15__, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge